# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

INGRID JOHNSON,
also known as INGRID SLEET,
Individually,

        Plaintiff,

      -vs-                              Case No. 14-CV-1420

DAUBERT LAW FIRM LLC, and
LVNV FUNDING, LLC,

        Defendants.

## DECISION AND ORDER

### INTRODUCTION

Plaintiff Ingrid Johnson ("Johnson") seeks redress for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), the Wisconsin Consumer Act, Chapters 421-427, Wisconsin Statutes (the "WCA"), and her common law right to privacy by the Defendants, Daubert Law Firm, LLC ("Daubert") and LVNV Funding, LLC ("LVNV"), (collectively the "Defendants"). (Compl. ¶¶ 3-9, 47-62.) (ECF No. 1.) Johnson alleges that Daubert improperly garnished her wages after she filed a voluntary amortization of her debts in Milwaukee County Circuit Court. (*Id.* at ¶¶ 28-34.)

The Defendants argue that this Court lacks subject matter jurisdiction and Johnson's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). (Defs.' Br. Mot. Dismiss 2.) (ECF No. 12.) More specifically, the Defendants argue that the *Rooker-Feldman* doctrine, which "prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced,'" applies to the case at bar. *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

## BACKGROUND

Johnson became delinquent on a financial obligation which was consigned, placed, or transferred to LVNV. (Compl. ¶¶ 15-16.) LVNV obtained a judgment against Johnson in Indiana state court (*Id.* at ¶ 17, Ex. A), and it hired and instructed Daubert to collect the debt on LVNV's behalf (*Id.* ¶ 18). Daubert began collection efforts with Johnson. (*Id.* at ¶ 19.)

In June 2014, Johnson sent a letter to Daubert requesting that it verify the debt, disputing the validity of the debt and, citing the FDCPA, instructing Daubert not to contact her regarding the debt. (*Id.* at ¶ 20, Ex. B.) Johnson sent a copy of the letter to LVNV. (*Id.* at ¶ 21.) Daubert replied in a letter which verified the amount owing as $3,087.86. (*Id.* at ¶¶ 22-23, Ex. C.)

*Daubert's Foreign Judgment Action*

On August 4, 2014, Daubert filed a foreign judgment action (the "Foreign Judgment Action") in Milwaukee County Circuit Court, and the Indiana judgment was docketed in that action the same day. (Stueland Aff. Ex. 1.) (ECF No. 14.) On August 21, Daubert mailed earnings garnishment notices to the Milwaukee County Clerk of Court requesting that the clerk authenticate and return the file-stamped notices. (*Id.* at ¶ 5, Ex. 2.) The earnings garnishment notice was docketed on September 11. (Larsen Aff. Ex. 1.) (ECF No. 13.) Daubert received authenticated and file-stamped copies on September 16 and forwarded the garnishment papers to Johnson's employer on September 18. (*Id.* at ¶¶ 7, 8, Ex. 4.) Daubert received a completed and signed garnishment form from Johnson's employer on September 26. (*Id.* at ¶ 9, Ex. 5.)

*Johnson's Voluntary Amortization Action*

n August 27, 2014, Johnson filed a voluntary amortization of her debts pursuant to Wis. Stat. § 128.21 in Milwaukee County Circuit Court (the "Amortization Action"). The petition listed Daubert as a creditor for $3,087.86. (*See* Compl. Ex. E.)[1] On September 12, Judge Daniel Noonan signed an order appointing a trustee and enjoining creditors from collecting on their debts. (Compl. ¶ 32.) The order explicitly states "[u]pon filing of this

---

[1] The Complaint alleges that Daubert was listed as the sole creditor. However, Miller & Miller LLC is also listed as a creditor. (*See* Compl. Ex. F.)

[o]rder and while the case is proceeding, no execution, attachment, activation of wage assignment or garnishment may be initiated or enforced by creditors of the above-names [sic] debtor unless such creditor is not included in the plan." (*See id.* at ¶ 33; *see also* Ex. F.) Despite the order enjoining Daubert from collecting the specified debt, Daubert garnished Johnson's wages for paychecks issued October 9 and 23, 2014. (Compl. ¶ 34.)

## ANALYSIS

The *Rooker-Feldman* doctrine is jurisdictional in nature. *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 569 F.3d 667, 670 (7th Cir. 2009). *Rooker-Feldman* precludes federal district courts from reviewing state court judgments because only the United States Supreme Court has appellate jurisdiction over state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)).

More specifically, *Rooker-Feldman* bars federal claims in two instances: (1) if the plaintiff requests that a federal district court overturn an adverse state court judgment, and (2) if a case involves federal claims that were not raised in state court or do not on their face require review of a state court's decision. *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012). "In this latter instance, *Rooker-Feldman* will act as a jurisdictional bar if those claims are

- 4 -

'inextricably intertwined' with a state court judgment." *Id.* (quoting *Taylor v. Fed. Nat. Mortg. Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004)).

The pivotal inquiry when determining if a claim is inextricably intertwined is whether the federal claim alleges that the supposed injury was caused by the state court judgment or, alternatively, whether the claim is an independent injury that the state court failed to remedy. *Id.*; *see also Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999). If the alleged injury resulted from the state court judgment, *Rooker-Feldman* prevents this Court from hearing the claim because it lacks subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional. *See Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 702 (7th Cir. 1998). Conversely, if the alleged injury is distinct from and not inextricably intertwined with the state court judgment, *Rooker-Feldman* does not apply. *Id.*

However, finding that a federal claim is inextricably intertwined with a state court judgment does not end the inquiry. *Brown*, 668 F.3d at 442. "Once it is determined that a claim is inextricably intertwined, we must then inquire whether 'the plaintiff [did or] did not have a reasonable opportunity to raise the issue in state court proceedings.'" *Id.* (quoting *Brokaw v. Weaver*, 305 F.3d 660, 667 (7th Cir. 2002)). If the plaintiff could have reasonably raised the issue in state court, the claim is barred by *Rooker-Feldman*. *Id.*

Johnson's Amortization Action was filed pursuant to Wis. Stat.

- 5 -

§ 128.21 (*See* Defs.' Br. Mot. Dismiss 3), which provides that a debtor who is earning wages or salary, but is unable to pay her bills on time may amortize those debts over a period of three years. Wis. Stat. § 128.21(1) (2013-2014). A debtor commences a § 128.21 proceeding by filing a petition with the court. *Id.* After a debtor files her petition, the court appoints a disinterested trustee to administer the plan. Wis. Stat. § 128.21(3). The debtor and the trustee develop a plan to pay the debts subject to the petition in full within three years. *Id.* Creditors may object to the plan, and the plan may also be rejected by the court. *Id.* If the plan is approved, the debtor makes payments to the trustee who then pays the creditors pursuant to the plan. *Id.* "However, unlike in a federal bankruptcy, the creditors are not prohibited from commencing or continuing any other collection activity against the debtor." *Eisberner v. Discover Prods., Inc.*, 921 F.Supp.2d 946, 947 (E.D. Wis. 2013).

While the plan is pending, any creditors' prior executions, attachments, or garnishment are enjoined, and the creditors are also prohibited from using the same to collect the debt. Wis. Stat. § 128.21(1)-(2). "Once a judgment is obtained, however, the creditor may not proceed to collect on it . . . ; doing so violates the court order and the automatic stay. Jeffery L. Murrell, *Chapter 128: Wisconsin's Bankruptcy Alternative*, Wis. Law., May 2008, at 10.

Under Wisconsin Statute § 812.35, a creditor wishing to garnish a

- 6 -

Case 2:14-cv-01420-RTR   Filed 08/04/15   Page 6 of 13   Document 17

debtor's wages must serve the debtor with an exemption notice, an answer form, and adopted schedules and worksheets. Wis. Stat. § 812.35(4)(b) (2013-2014). The creditor must serve the debtor within seven business days after the date of service on the garnishee and at least three business days before the garnishment is to take effect. Wis. Stat. § 812.35(4)(c).

Claims are typically barred by *Rooker-Feldman* if the plaintiff had the opportunity to raise the claims before the state court. *See Long*, 182 F.3d at 557-58. Plaintiff Long entered into a lease agreement with Shorebank, and Shorebank alleged that Long was delinquent on her obligations. *Id.* at 552. Prior to filling an eviction proceeding against Long, Shorebank fraudulently induced Long to sign a final judgment by representing that the document provided for the postponement of the eviction proceeding. *Id.* at 552. The state court entered judgment in favor of Shorebank and Long was evicted shortly thereafter. *Id.* at 552-53. Long filed suit against Shorebank in federal court for alleged violations of the FDCPA, which the district court determined were barred by *Rooker-Feldman*. *Id.*

On appeal, the district court's decision was overturned because "[t]he counts in Long's complaint alleging violations of the FDCPA are independent from the eviction order and, therefore, *Rooker-Feldman* does not apply to these claims." *Id.* at 555. Shorebank's alleged violations of the FDCPA were independent because prior to the eviction proceeding Shorebank knowingly

- 7 -

made a false representation of the amount owed by Long. *Id.* at 556. The court further reasoned that the violations alleged by Long were independent and complete prior to the entry of the eviction order. *Id.*

Further, the Seventh Circuit examined whether Long had a reasonable opportunity to raise her due process claim in state court proceedings. *Id.* Long's due process claim could not be considered separate from the state court's eviction order because had the state court judgment resulted in her favor, the injury Long complained of would not have occurred. *Id.* However, the court found that *Rooker-Feldman* did not bar Long's claim because procedurally she did not have a reasonable opportunity to address the claim in state court. *Id.* at 558-59. More specifically, Long's claims could not have been presented during the eviction proceeding because state procedure barred all non-possessory claims. *Id.* at 559. Therefore, Long's claims were not inextricably intertwined with the state court judgment. *Id.* at 560.

*Jung v. Cottonwood Fin. Wis., LLC*, 14-cv-241-jdp, 2014 WL 4796756, at \*1-6 (W.D. Wis. Sept. 26, 2014), examined *Rooker-Feldman* in the context of garnishment proceedings. Plaintiff Kelli Jung defaulted on a short-term loan owed to Defendant Cottonwood. *Id.* at \*1. After having judgment entered against Jung, Cottonwood sought the assistance of a law firm to collect the debt. *Id.* at \*2. Cottonwood's attorneys filed garnishment notices with the Wisconsin state court and served garnishment notices on Jung and

her employer. *Id.* Over the course of the garnishment proceedings, Jung did not object to the garnishment. *Id.*

Almost a year after Cottonwood had satisfied its judgment, Jung asserted that the garnishment violated the WCA. *Id.* The Defendants moved to dismiss under *Rooker-Feldman*. *Id.* The district court granted the motion to dismiss, reasoning that "Jung's 'actual injury' [was] the state court's approval of defendants' request to garnish her wages, without which there would not have been any alleged unlawful collection practices." *Id.* at *3. The court further reasoned that although Jung did not specifically request reversal of the state court judgment, the injury was a result of the state court determination. *Id.*

A party may advance a jurisdictional challenge either by a facial or factual attack. *Wallenfang v. Havel*, 707 F. Supp. 2d 800, 805 (E.D. Wis. 2010). "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

A factual attack, on the other hand, concedes that the complaint is formally sufficient, but contends that there is in fact no subject matter jurisdiction. *Id.* at 444. In considering a factual attack, the Court is free to weigh the evidence to determine whether jurisdiction exists. *Wallenfang*, 707

F. Supp. 2d at 806. More specifically, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (quoting *Grafon v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979)).

The plaintiff has the obligation to establish jurisdiction by competent proof. *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998). The presumption of correctness given to the complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question. *Id*.

Here Daubert makes a factual attack, conceding Johnson has a formally sufficient complaint but alleging *Rooker-Feldman* bars jurisdiction. This Court may look beyond the jurisdictional allegations of the Complaint and view other relevant evidence that has been submitted. While the presumption of correctness given to Johnson's Complaint falls off because Daubert has proffered evidence that calls this Court's jurisdiction into question, the Court is free to weigh the evidence.

According to the Complaint, Daubert received notice of the amortization action prior to October 9, 2014. (Compl. ¶ 34 (alleging Daubert

- 10 -

proceeded to "willfully ignore" the order.) However Daubert, by means of the Stueland Affidavit, avers that it did not receive notice of the amortization action until October 15. (Stueland Aff. ¶ 10.) The Court can weigh the evidence; however, even accepting Johnson's allegations as true, her claim is still inextricably intertwined in the state court judgment.

Johnson brought a voluntary amortization action in state court that stayed all garnishment actions against her; she alleges by this federal action that Daubert violated the state court's stay. Johnson's alleged injuries are distinguishable from those of Long. In *Long*, Shorebank's violation of the FDCPA was complete and independent prior to the eviction order, whereas Daubert's alleged violations of the FDCPA are inextricably intertwined with the state court judgment because without the authorization of the garnishment action Johnson would not have a claim.

Further, Johnson had a reasonable opportunity to address her claim in state court proceedings. The amortization plan was approved November 17, 2014, and this suit was filed on November 11. (Larsen Aff. Ex. 2; *see generally* Compl.) Once she received notice of the garnishment action, Johnson had the opportunity to bring Daubert into state court prior to the October 9 and 23 garnishments and prior to filing this suit. Consequently, Johnson's failure to enforce the state court order inextricably intertwines her current claims with the state court judgment.

Johnson alleges that her claims are wholly independent of the state court judgment. (*See* Compl. ¶¶ 28-42.) Johnson's allegation are similar to Jung's because both allege violations of the WCA due to garnishment of their wages. Jung defaulted on a short-term loan, which Cottonwood collected through garnishment of Jung's wages. After Cottonwood satisfied its judgment, Jung asserted Cottonwood had violated the WCA. Similarly, Johnson became delinquent on a debt owed to LNVN, and Daubert was hired to collect that debt. Daubert began the process of garnishing Johnson's wages, and once that process started she filed this suit.

In *Jung*, the court found that Jung's actual injury was the result of a state court determination — the court's approval of Cottonwood's request to garnish her wages. Here, Johnson complains that Daubert unlawfully garnished her wages while the state-court ordered stay in the Amortization Action was in effect. Johnson's injury was a result of a separate state court determination in the Foreign Judgment Action to allow Daubert to garnish her wages, and she could have sought redress by seeking enforcement of the stay. Therefore, Johnson's claim is dependent upon the state court judgment, and this Court lacks jurisdiction pursuant to the *Rooker-Feldman* doctrine.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) (ECF No. 12) is **GRANTED**;

This action is **DISMISSED**; and

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this __4th__ day of August, 2015.

BY THE COURT:

_____
**HON. RUDOLPH T. RANDA
U.S. District Judge**